Case 1:25-mj-00018-MJS    Document 1-1

Case: 1:25-mj-00018
Assigned To : Judge Matthew J. Sharbaugh
Assign. Date : 01/28/2025
Description: COMPLAINT W/ARREST WARRANT

## STATEMENT OF FACTS

1. At approximately 3:00 a.m. on October 10, 2024, Metropolitan Police Department ("MPD") Officers Webster and Stanford were on duty in full uniform and operating a marked cruiser. At that same time, MPD Officers Williams and Tibbs were on duty in full uniform and operating a separate, marked cruiser. Both cruisers were on patrol in MPD's Third District.

2. At approximately 3:06 a.m., Officer Stanford observed a gray BMW 650i ("the VEHICLE") make a left turn without signaling while turning into the eastbound lanes of the 800 block of Florida Avenue, Northwest. Officers Stanford and Webster effected a traffic stop and the VEHICLE stopped in front of 801 Florida Avenue, Northwest.

7. Officer Stanford attempted to communicate with the driver, later identified as Ramone Stephan JENNINGS, about the reason for the traffic stop. JENNINGS immediately became noncompliant and irate with Officer Stanford. JENNINGS refused to roll his window down more than a small amount, and refused to roll down the other car windows despite Officer Stanford's statement that the tint was too dark, and he could not see into the vehicle. Officer Stanford then asked JENNINGS to step out of the vehicle, and he complied.

8. JENNINGS was holding a manilla folder when he exited the vehicle, which he handed to Officer Stanford. The folder contained multiple documents related to JENNINGS' ownership of the vehicle, and also included a paper copy of JENNINGS' District of Columbia Learners' Permit. Officers conducted a check of the Learners' Permit which confirmed its validity, and further confirmed that JENNINGS had no driver's license. The Learner's Permit only authorized JENNINGS to operate a vehicle between the hours of 6am and 9pm while

accompanied by a licensed driver, but the traffic stop occurred at approximately 3am. At that point, JENNINGS was detained and was not free to leave.

9. While JENNINGS was talking to Officer Stanford, Officers Webster and Williams were standing on the passenger side of the gray BMW. Officer Webster observed a clear cup with a lime wedge on the brim containing a clear liquid, that he believed to be an alcoholic beverage. When Officer Webster asked if there was alcohol in the cup, the rear passenger stated there was not that much in the cup and dropped the cup at Officer Webster's feet causing the contents of the cup to splash up and hit Officer Webster's hands. Officer Webster smelled the odor of alcohol on the liquid that splashed him. Officer Williams then picked up the cup and smelled the odor of alcohol emitting from the cup. At that point, the officers instructed all other occupants to exit the vehicle.

10. Officer Williams made a comment to the rear passenger (who poured out the cup) stating that he suspected there was tequila in the cup, and the rear passenger confirmed. Officer Webster asked JENNINGS how much he had to drink before driving, and JENNINGS stated that he had one drink. The officers then determined that none of the passengers had a valid driver's license. As such, neither they nor JENNINGS could drive the VEHICLE home, and a tow truck was called to impound it for safekeeping.

11. Given the open container of alcohol in the vehicle, the officers conducted a probable cause search of the VEHICLE to find further evidence of that crime. While searching the VEHICLE, they discovered three clear plastic containing an unknown amount of suspected marijuana as well as a cellular telephone on the center console of the vehicle. JENNINGS identified the cellular telephone as belonging to him. The officers also found a Taurus, G2C 9mm

semi-automatic handgun with an obliterated serial number in the glovebox along with mail matter addressed to JENNINGS and a high-capacity magazine for 9mm ammunition.



12. The Taurus G2c was loaded with 10 rounds in the magazine and 1 round in the chamber. The extended magazine was loaded with an additional 25 rounds of 9mm ammunition.





13. A check of JENNINGS' criminal history confirmed that he has prior convictions which prevent him from legally possessing a firearm. Specifically, in D.C. Superior Court Case Number 2006 CF1 11378, JENNINGS was convicted of Robbery While Armed, Felony Murder While Armed, and Second Degree Murder While Armed. According to BOP, JENNINGS was paroled in April 2023.



17.     JENNINGS was arrested and charged with unlawful possession of a firearm. Following his arrest, JENNINGS consented to the collection of his DNA by buccal swab. MPD Officers also collected DNA swabs from the Taurus G2c that was recovered from the glove compartment of the VEHICLE. On January 21, 2025, the FBI Laboratory issued its report of DNA analysis comparing DNA collected from JENNINGS' buccal swab with DNA collected from swabs of the firearm ("the Report").

18.     The Report notes that swabs were taken from three different locations on the exterior of the Taurus G2c.

| | |
|---|---|
| Item 1 | Two swabs from Taurus G2C firearm (1B2, E8429608) |
| Item 2 | Two swabs from Taurus G2C firearm (1B2, E8429608) |
| Item 3 | Two swabs from Taurus G2C firearm (1B3, E8429609) |

19.     With regard to two of those three swabs, the Report noted that the DNA analysis provided "Very Strong Support" that JENNINGS was a contributor of the DNA that was collected when the firearm was swabbed.

**Item 1 (Swabs from Taurus G2C firearm (MPD 01JP; MV1-1))**

Male DNA[2] was obtained from item 1. Item 1 was interpreted as originating from four individuals.

The DNA results from item 1 are 1.1 octillion times more likely if JENNINGS and three unknown, unrelated people are contributors than if four unknown, unrelated people are contributors.

| Person of Interest (POI) | Likelihood Ratio (LR)[3] | Level of Support[4] |
|---|---|---|
| JENNINGS | $1.1 \times 10^{27}$ (1.1 octillion) | Very Strong Support for Inclusion |

**Item 3 (Swabs from Taurus G2C firearm (MPD 03JP; MV1-5))**

Male DNA[2] was obtained from item 3. Item 3 was interpreted as originating from three individuals.

The DNA results from item 3 are 720 quadrillion times more likely if JENNINGS and two unknown, unrelated people are contributors than if three unknown, unrelated people are contributors.

| Person of Interest (POI) | Likelihood Ratio (LR)[3] | Level of Support[4] |
|---|---|---|
| JENNINGS | $7.2 \times 10^{17}$ (720 quadrillion) | Very Strong Support for Inclusion |

20.     The report noted that, for the third swab, it was equally likely that JENNINGS was, or was not, a contributor of the DNA that was collected when the firearm was swabbed.

**Item 2 (Swabs from Taurus G2C firearm (MPD 02JP; MV1-2))**

Male DNA[2] was obtained from item 2. Item 2 was interpreted as originating from four individuals.

The DNA results from item 2 are equally likely if JENNINGS and three unknown, unrelated people are contributors than if four unknown, unrelated people are contributors.[5]

21.     Based on all of the above, I respectfully submit that there is probable cause to believe that, on or about October 10, 2024, Ramone Stephan JENNINGS committed the offense of Unlawful Possession of a Firearm by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1).

_____
Darius J. Terry
Special Agent
Bureau of Alcohol, Tobacco, Firearms & Explosives
.

SWORN AND SUBSCRIBED BEFORE ME ON JANUARY 28, 2025.

_____
MATTHEW J. SHARBAUGH
United States Magistrate Judge